MINNIE ZABRISKIE and FANNIE DE WOELFF

*v.*

WILLIAM HUYLER et al.

[Filed January 24th, 1902.]

1. The court of chancery has jurisdiction to entertain a suit to obtain the construction of a will in order to establish and recover a legacy.

2. Testatrix's estate, at the time of her death, was worth about $120,000. Her family in 1882, when her will was made, consisted of herself, her husband and his two daughters by a former marriage. She gave $10,000 to each of her stepdaughters, made other legacies amounting to $25,000, and gave the entire residue to her husband, "to have and to hold the same unto him and to his heirs, executors, administrators and assigns forever." The husband died before the testatrix.—*Held*, in a suit by the step-daughters to recover the residuary legacy that the general rule is that a legacy to A "and his heirs" is a legacy to A alone, the word "heirs" being a word of limitation and not of substitution; that in the case of a legacy to A "or his heirs" the general rule is otherwise; that a special meaning of words may be accepted if such intention can be gathered from the whole will when construed with the aid of such extrinsic evidence as the law makes competent, and that the word "and" may thus be construed in the sense of the word "or" if such meaning is plainly indicated; that in this case the legacy was not in form to the heirs of the husband, but to the husband alone, with a formal *habendum* clause used to define his title and tenure and that if a case could be imagined where a technical *habendum* clause like this could have any other meaning attributed to it besides that which it has borne from time immemorial, there is nothing to justify such a construction in this case.—*Held further*, that if the words to be construed were a part of the language employed to effect a legacy instead of being a part of the language employed to define the title and tenure of the legatee, and if the word "and" might be construed as "or," still it would seem that the gift over would be void for uncertainty.

3. In a suit to construe a will, allegations in the bill as to the declared purpose of testatrix, her understanding of the meaning and legal effect of the language of her will, her instructions to her counsel with reference to the drafting of her will, and her intentions in refraining from changing her will during the last years of her life, must be excluded from consideration.

On motion to strike out bill.

*Mr. William W. Watson,* for the motion.   .

*Mr. Cornelius Doremus, contra.*

STEVENSON, V. C.

The will of Mrs. Euphemia Conklin, deceased, contains the
following residuary clause:

"All the rest, residue and remainder of my estate, both real and per-
sonal, whatsoever and wheresoever as well that which I now have as that
which I may hereafter acquire or die possessed of or entitled to including
all legacies heretofore mentioned which may lapse and any portion of my
estate that I have not hereinbefore effectually or sufficiently disposed of
I give, devise and bequeath unto my dear husband Peter L. Conklin to
have and to hold the same unto him and to his heirs, executors, adminis-
trators and assigns forever."

The complainants are the two stepdaughters of the testatrix,
the children of her husband, Peter L. Conklin, by a former
marriage. The defendants are the administrators with the will
annexed of Mrs. Conklin, and her next of kin and their repre-
sentatives, embracing a large number of cousins of the testatrix
of various degrees. Peter L. Conklin died in the lifetime of the
testatrix.

The object of the bill, in its present form after amendment, is
to establish the right of the complainants to take the residue of
their stepmother's estate under the terms of the residuary clause
above set forth.

We need not inquire whether, under the facts of this case, the
*status* of the real estate of which Mrs. Conklin died seized can be
determined in this suit. *3 Pom. Eq. Jur. § 1155; Torrey* v.
*Torrey, 10 Dick. Ch. Rep. 410.* The bill may be treated as a
bill to obtain a judicial construction of a will in order to establish
and recover a legacy. Regarding the suit in this aspect, the juris-
diction of this court is beyond question. *3 Pom. Eq. Jur. §
1156; Frey* v. *Demarest, 1 C. E. Gr. 236; Hedges* v. *Norris, 5
Stew. Eq. 192.*

The amended bill, by inadvertence, as counsel for the com-
plainants admitted at the argument, retains a prayer that, in
case it should be adjudged that the residuary estate in question

does not belong to the complainants, its distribution be directed·
among the next of kin of the testatrix who shall be found entitled
thereto. This court, upon this bill in its present form, can only
entertain the question whether or not the complainants are en-·
titled to this residuary estate.

The present administrators are not in court asking for any
instructions; they move to dismiss the complainants' bill, speci-·
fying the grounds of objection with great minuteness. These
grounds are all contained in the proposition that, according to·
the case made out by the bill of complaint, the legacy of the
residue made by Mrs. Conklin to her husband lapsed upon his
death, and that therefore, as to such residue, she died intestate.

It is established law that a legacy to A "and his heirs" lapses
upon the death of A in the lifetime of the testator, the word
"heirs" being a word of limitation and not of substitution. *Hand*
v. *Marcy, 1 Stew. Eq. 59; Palmer* v. *Munsell, 46 Atl. Rep. 1094;·*
*Kimball* v. *Story, 108 Mass. 382; Armstrong* v. *Moran, 1 Bradf.*
*314.*

In the case last cited Surrogate Bradford says (at *p. 315*):
"There seems to me no hazard in speaking too strongly in saying
that no case of authority can be found in the books where a gift
to A 'and his heirs' has been sustained in favor of the next of
kin on the death of A in the life of the testator, unless an in-
tention to substitute the next of kin in the place of the deceased
legatee, so as to save a lapse, could be deduced from some other·
clause or expression in the will."

The rule is otherwise in case of a legacy to A "or his heirs" for
very plain reasons. *Brokaw* v. *Hudson's Executors, 12 C. E. Gr.*
*135; Huston* v. *Read, 5 Stew. Eq. 591; Giltings* v. *McDermott,*
*2 Myl. & K. 80; Hand* v. *Marcy, supra.*

The rules above referred to are subject, of course, to the limita-·
tion expressd by Surrogate Bradford. The ordinary or technical·
meaning of words may be disregarded, and a special meaning·
accepted, if such intention of the testator can be gathered from
the whole will when read in the light of the circumstances which
surrounded the testator when he made his will—when construed·
with the aid of such extrinsic evidence as the law makes com-
petent.

The word "and" in the phrase "and his heirs" may be taken in the sense of "or" if such meaning is plainly indicated. *Hawn v. Banks, 4 Edw. Ch. 664; Armstrong v. Moran, supra.*

The burden upon the complainants in this case is indeed great. No case has been cited of a gift by will to a person named, effected by legal phraseology including a technical and accurate *habendum* clause, where the word "heirs" in the *habendum* clause has been construed in any other way than as a term of limitation. The gift here is not only a legacy, but a devise of land, so that the *habendum* to the heirs of the devisee was added in conformity with a common usage. In most of the cases which draw the distinction between the force of the word "and" and the force of the word "or" the legacy, according to the strict grammatical form of the phraseology employed, is given, not only to the legatee named, but to other persons who are designated as his heirs. The rule of construction, however, founded largely upon technical usage, is settled, as we have seen, that a gift in form to A and his heirs is a gift to one donee, not two. It is only necessary, however, to substitute the word "or" for the word "and" in order to give the terms which, in form, import a gift to heirs their ordinary meaning and effect.

But in the case under consideration no words of gift to heirs or to any other person, or class of persons, besides the single legatee named, are in any way employed. The gift to Peter L. Conklin is absolute. The ancient technical formula constituting the *habendum* clause is used to define his title and tenure. It is difficult to imagine a case where it would be possible to attribute to such an *habendum* clause any other function than that which it has performed from time immemorial in all sorts of written transfers of property.

If the words to be construed were a part of the language employed to effect the devise and legacy instead of being a part of the language employed to define the title and tenure of the devisee and legatee, and we might substitute the word "or" for the word "and" at will, still it would seem that the gift over would be void for uncertainty. *Waite v. Templer, 2 Sim. 525; Gillings v. McDermott, supra; Kimball v. Story, supra.*

This uncertainty is so apparent that it creates a very high

degree of improbability that a testator could have any donative purpose beyond the legatee whom he names when he employs such language.

Nothing appears upon the face of the will, nor is anything alleged in the bill of complaint of which this court can take cognizance, which can change the meaning of this residuary clause. It may be, as would appear from the bill, that Mrs. Conklin misunderstood the meaning and legal effect of the residuary clause as her counsel had drawn it. She may have actually intended twenty years before her death, when she made this will, to dispose of her property as it is alleged she thought twenty years later she had disposed of it.

The allegations in the bill in regard to the actual and declared purpose of Mrs. Conklin, her instructions to her counsel with reference to the drafting of her will and her belief in regard to the legal effect of her will as drawn, must be excluded from consideration. *Leigh* v. *Savidge, 1 McCart. 124; Griscom* v. *Evens, 11 Vr. 402; Burnet* v. *Burnet, 3 Stew. Eq. 595, 598; Cleveland* v. *Carson, 10 Stew. Eq. 377.*

The bill does not set forth fully the circumstances which surrounded Mrs. Conklin when she made her will.

The will was made March 12th, 1881, twenty years before the testatrix's death and nineteen years before the death of her husband, the residuary legatee. The ages of these various parties are not stated but it is inferable that the testatrix and her husband and his two daughters, the complainants, constituted one family. What the estate of the testatrix amounted to at the time she made her will is not set forth, but it appears that her total estate at the time of her death was about $120,000, one-sixth of which was real estate and five-sixths personalty. The testatrix made a gift of $10,000 to each of the complainants and gave other legacies amounting to about $25,000. She then not only bequeathed the residue of her estate to her husband, but she appointed him one of her executors.

The testatrix thus made express provisions for each of the complainants. There is nothing to show that her full donative purpose with respect to them was not effected by the substantial legacies which she gave to them. There is no legal evidence

Zabriskie *v.* Huyler.

which suggests that in disposing of her residuary estate she contemplated the situation which would exist in case she survived her husband. *Cowley* v. *Knapp, 13 Vr. 297.*

We have to deal with Mrs. Conklin's will as she made it, not as she thought she made it, or as she possibly or probably would have made it if she had been correctly informed as to the legal effect of the language which she had employed in her will and had thereupon executed another will.

There are allegations in the bill which indicate under what circumstances and with what intentions Mrs. Conklin refrained from changing her will during the last years of her life, a matter which is not the subject of investigation in this case. It is safe to say that in many cases testators repose for years upon an altogether erroneous construction of their own wills. Sometimes they discover their errors in time and sometimes, it must be admitted, they do not. Courts provide no relief from such misfortunes.

I shall advise that the bill be dismissed.